THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL 2724**<br>**16-MD-2724**<br><br>HON. CYNTHIA M. RUFE<br><br>Civil Action Nos. |
| **THIS DOCUMENT RELATES TO:** | |
| *1199SEIU National Benefit Fund v. Actavis Holdco U.S., Inc.* | 19-cv-6011 |
| *César Castillo, Inc. v. Actavis Holdco U.S., Inc.* | 20-cv-0721 |
| *County of Albany v. Actavis Holdco U.S., Inc.* | 21-cv-1875 |
| *County of Westchester v. Actavis Holdco U.S., Inc.* | 21-cv-4474 |
| *CVS Pharmacy, Inc. v. Actavis Elizabeth, LLC* | 20-cv-6310 |
| *J.M. Smith Corporation v. Actavis Holdco U.S., Inc.* | 20-cv-4370 |
| *MSP Recovery Claims, Services LLC v. Actavis Elizabeth LLC* | 20-cv-0231 |
| *Rite Aid Corporation v. Actavis Holdco U.S., Inc.* | 20-cv-3367 |
| *Walgreen Company v. Actavis Holdco U.S., Inc.* | 20-cv-6258 |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ROXANE'S MOTION TO DISMISS ALL CLAIMS**

FILED WITH REDACTIONS – PUBLIC VERSION

## TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................1

II. FACTUAL BACKGROUND .........................................................................................1

III. ARGUMENT ..................................................................................................................4

    A. Legal Standard ....................................................................................................4

    B. Under this Court's Standards, Plaintiffs Plead Plausible Sherman Act Claims Against Roxane...................................................................................5

        1. Plaintiffs' Allegations Satisfy the "Parallel Conduct" Element. ..................5

        2. Plaintiffs' Allegations Establish the Existence of Certain "Plus Factors." ........................................................................................................7

            a. Plaintiffs' "Motive" Allegations Are Consistent and Well-Pled. ...............................................................................................7

            b. Plaintiffs' Allegations of "Actions Against Self-Interest" Are Well-Pled. ...............................................................................8

            c. Plaintiffs Allege Sufficient "Facts Implying a Traditional Conspiracy." ...........................................................................................8

    C. Plaintiffs' Allegations Are Sufficient to State a Claim Against Roxane Individually. ...................................................................................................12

IV. CONCLUSION.............................................................................................................14

FILED WITH REDACTIONS – PUBLIC VERSION

## **TABLE OF AUTHORITIES**

**Cases** Page(s)

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................4

*U.S. ex rel. Bibby v. Wells Fargo Bank, N.A.*,
  906 F. Supp. 2d 1288 (N.D. Ga. 2012).................................................................13

*Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*,
  113 F. Supp. 3d 807 (D. Md. 2015).......................................................................12

*In re Generic Pharms. Pricing Antitrust Litig.*,
  338 F. Supp. 3d 404 (E.D. Pa. 2018) (J. Rufe) ............................................... *passim*

*In re Generic Pharms. Pricing Antitrust Litig.*,
  394 F. Supp. 3d 509 (E.D. Pa. 2019) .......................................................................1

*Murray v. Cnty. of Hudson*,
  No. 17-2875 (JMV) (MF), 2018 WL 3000333 (D.N.J. June 15, 2018)..................13

*In re: Processed Egg Prods. Antitrust Litig.*,
  821 F. Supp. 2d 709 (E.D. Pa. 2011) ......................................................................7

*In re Se. Milk Antitrust Litig.*,
  555 F. Supp. 2d 934 (E.D. Tenn. 2008)................................................................13

*Sprint Sols., Inc. v. Fils-Amie*,
  44 F. Supp. 3d 1224 (S.D. Fla. 2014) ..............................................................12, 13

FILED WITH REDACTIONS – PUBLIC VERSION

## I.   INTRODUCTION

Plaintiffs' allegations related to Roxane Laboratories Inc. and its corporate successors ("Roxane")[1] are well-plead, plausible, and sufficient to state a claim. A straightforward comparison of the Court's prior motion-to-dismiss opinion—*In re Generic Pharms. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 441-49 (E.D. Pa. 2018) (J. Rufe) ("*In re Generic*")—to the current allegations demonstrates that this is the case. Quite simply, Plaintiffs' allegations are ***identical*** to those that the Court previously found sufficient with respect to the "parallel-conduct" element, "motive" plus factor, and "actions against self-interest" plus factor. Additionally, Plaintiffs' allegations are ***more suggestive of conspiracy*** than those the Court previously found sufficient for the "facts implying a traditional conspiracy" plus factor.

Roxane's motion to dismiss—which seeks to relitigate settled principles by largely ignoring the Court's earlier opinions—should be denied.[2]

## II.   FACTUAL BACKGROUND

Plaintiffs have plausibly alleged that Roxane engaged in both an overarching conspiracy[3]

---

[1] Roxane Laboratories, Inc. no longer exists. It was acquired by Hikma Pharmaceuticals PLC in March 2016 and renamed as Hikma Labs, Inc. Hikma Pharmaceuticals PLC also acquired West-Ward Pharmaceuticals Corp., which it renamed Hikma Pharmaceuticals USA, Inc. Both Roxane Laboratories Inc. and West-Ward Pharmaceuticals Corp. participated in the overarching conspiracy alleged in this MDL before they were acquired and renamed by Hikma Pharmaceuticals PLC. Defendants define "Roxane" to mean its apparent corporate successors, Defendants Hikma Labs Inc. (f/k/a Roxane Laboratories, Inc.) and West-Ward Columbus Inc (f/k/a Boehringer Ingelheim Roxane Inc.).

[2] Roxane's separate and erroneous argument that Plaintiffs' claims are time barred is addressed fully in Plaintiffs contemporaneously filed joint opposition to Roxane and the other moving Defendants' motion to dismiss. Plaintiffs incorporate the arguments made in the joint brief by reference.

[3] The Court has already refused to dismiss West-Ward Pharmaceuticals Corp. (now called Hikma Pharmaceuticals USA, Inc.) from this case in upholding the Overarching Conspiracy Claims. *In re Generic Pharms. Pricing Antitrust Litig.*, 394 F. Supp. 3d 509, 533 (E.D. Pa. 2019).

FILED WITH REDACTIONS – PUBLIC VERSION

and several drug-specific conspiracies with respect to the following seven drug products[4] and corresponding co-conspirators:[5]

---

Separately, Roxane incorrectly suggests that EPPs do "not include Roxane in any of its allegations underlying the purported overarching conspiracy." Mem. of Law in Support of Def. Roxane's Mot. to Dismiss all Claims at 4–5, *1199SEIU Nat'l Benefit Fund v. Actavis Holdco U.S., Inc.*, No. 19-cv-6011 (E.D. Pa. Feb. 28, 2022), ECF No. 110 ("Roxane Br.") at 4. This ignores EPPs' well-pled allegations. *See, e.g.*, End-Payor Pls.' Second Am. Class Action Compl. ¶¶ 2, 105–157, 223, 906, 1417, 1427, 1455, 1696, *1199SEIU Nat'l Benefit Fund v. Actavis Holdco U.S., Inc.*, No. 19-cv-6011 (E.D. Pa. Jan. 7, 2021), ECF No. 85 ("EPP Compl.").

[4] Plaintiffs' complaints make clear that Roxane and its corporate successors will be referred to collectively as "West-Ward" throughout, and that Roxane's corporate successors remain liable for Roxane's conduct. *See e.g.*, Direct Purchaser Pls.' Am. Class Action Compl. ¶¶ 91–95, *Cesar Castillo, Inc. v. Actavis Holdco U.S., Inc.*, No. 20-cv-0721 (E.D. Pa. Oct. 21, 2020), ECF No. 62 ("DPP Compl."); *Id.* ¶ 5 ("West-Ward Columbus, Inc., Hikma Labs, Inc. (formerly Roxane Laboratories, Inc.), and Hikma Pharmaceuticals USA, Inc. (together, West-Ward) . . . ."); Compl. ¶ 68, *CVS Pharmacy, Inc. v. Actavis Elizabeth, LLC*, No. 20-cv-6310 (E.D. Pa. Dec. 15, 2020), ECF No. 1 ("CVS Compl.") ("Defendant Hikma Labs, Inc., formerly known as Roxane Laboratories, Inc., is a Nevada corporation with its principal place of business in Eatontown, New Jersey. Hikma, Hikma Labs, Inc., and West-Ward Columbus, Inc. are all subsidiaries of Hikma Pharmaceuticals plc, a public liability company based in London, England. Unless addressed individually, Hikma, Hikma Labs Inc., and West-Ward Columbus, Inc. are collectively referred to herein as 'West-Ward.'"); Am. Compl. ¶ 64, *Rite Aid Corp. v. Actavis Holdco U.S., Inc.*, No. 20-cv-3367 (E.D. Pa. Dec. 15, 2020), ECF No. 27 ("Rite Aid Compl.") ("West-Ward Pharmaceuticals Corp., West-Ward Columbus Inc., and Hikma Labs Inc. are collectively referred to in this Complaint as 'West-Ward' for the period beginning March 2, 2016.").

Roxane appears to suggest that Plaintiffs' use of "West-Ward" indicates that there are no "specific" allegations against Roxane. Roxane Br. at 1. Yet, Roxane's contention that "none" of the complaints include any specific allegations against it is plainly incorrect. For example, the EPP complaint specifically identifies Roxane's conduct. EPP Compl. ¶ 230 [REDACTED] *see also id.* ¶¶ 225–232, 908–913, 1421–26, 1457–62, 1698–1703.

[5] Roxane focuses on the seven drug products identified in the EPP and DPP complaints. Roxane Br. at 4–5. While these allegations are sufficient to maintain claims against Roxane, other Plaintiffs allege that Roxane participated in additional individual drug conspiracies with additional co-conspirators. *See, e.g.*, Rite Aid Compl.; CVS Compl.; First Am. Compl., *Cnty. of Albany v. Actavis Holdco U.S., Inc.*, No. 21-cv-1875 (E.D. Pa. June 30, 2021), ECF No. 19; First Am.

| Drug Product | Alleged Co-Conspirator(s) |
|---|---|
| Balsalazide Disodium (750 mg capsules) | Apotex[6] |
| Butorphanol Tartrate (10 mg/ml nasal spray) | Apotex and Mylan[7] |
| Exemestane (25 mg tablets) | Greenstone and Alvogen[8] |
| Fluticasone Propionate (50 cg nasal spray) | Akorn, Apotex and Wockhardt[9] |
| Methadone HCL (5 mg & 10 mg tablets) | Mallinckrodt[10] |
| Methotrexate Sodium (2.5 mg tablets) | Mylan, Par and Teva[11] |
| Prednisone (1 mg, 2.5 mg, 5 mg, 10 mg & 20 mg tablets) | Actavis, Cadista and Par[12] |

These generic medications are used to treat different conditions, including, among other things, ulcerative colitis (Balsalazide Disodium), severe pain (Butorphanol Tartrate), cancer (Exemestane and Methotrexate Sodium), asthma, chronic pulmonary disease (Fluticasone Propionate), addiction (Methadone HCL), and immune system disorders (Prednisone). *See* DPP Compl. ¶¶ 291, 397, 852, 955, 1158, 1184, 1527. Each has been available in the United States for years, if not decades, and has been sold into a "mature" market such that "[n]o non-collusive

---

Compl., *Cnty. of Westchester v. Actavis Holdco U.S., Inc.*, No. 21-cv-4474 (E.D. Pa. Mar. 16, 2022), ECF No. 25.

[6] DPP Compl. ¶¶ 291–99. For brevity and efficiency, this brief cites primarily to the DPP complaint. Unless otherwise noted, the allegations in the other Plaintiff complaints are similar, if not identical. For the Court's convenience, exhibit 1, attached hereto, provides a chart that identifies corresponding examples of allegations from the other Plaintiffs' complaints.

[7] *Id.* ¶¶ 397–406.

[8] *Id.* ¶¶ 852–59.

[9] *Id.* ¶¶ 955–62.

[10] *Id.* ¶¶ 1158–67.

[11] *Id.* ¶¶ 1184–97.

[12] *Id.* ¶¶ 1527–36.

market factors . . . can explain the artificially inflated prices." *See id.* ¶¶ 292, 298, 398, 405, 853, 858, 956, 961, 1159, 1166, 1185, 1196, 1528, 1535. Absent price fixing, manufacturers and purchasers expect the cost of these drugs to continuously approach the marginal cost of production. *See id.* ¶¶ 111–18.

With respect to each drug, Plaintiffs allege that while prices were stable and competitive for some time, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* ¶¶ 294, 295, 297, 400, 402, 404, 855, 857, 958, 960, 1161–63, 1165, 1187–1195, 1530–34.

Moreover, the complaints allege that the conspiracy was "aided by the prevalence of trade association meetings and conferences where the parties were able to meet in person." *Id.* ¶¶ 296, 403, 856, 959, 1164, 1194, 1533. Appendix A to this motion details the meetings in which high-level executives from Roxane, Alvogen, Akorn, Apotex, Cadista, Greenstone, Mallinckrodt, Mylan, Par, Teva, and Wockhardt furthered their conspiracy with respect to the seven products above that they manufactured, as well as other drug products, pursuant to their overarching conspiracy. *See also id.* at Ex. E (listing all alleged trade-association meetings).

### III. ARGUMENT

#### A. Legal Standard

Rule 12(b)(6) "do[es] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As this Court has explained:

> [J]udging the sufficiency of a pleading is a context-dependent exercise. On a motion to dismiss, the Court consider[s] plausibility, not probability . . . . In other words, Plaintiffs are not required to plead facts that, if true, definitely rule out all possible

innocent explanations. Rather, to withstand dismissal, Plaintiffs must state enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement even if the court believes such proof is improbable.
. . . In determining whether to grant . . . Defendants' motions to dismiss, the Court must ordinarily consider only those facts alleged in the complaints, accepting the allegations as true and drawing all logical inferences in favor of the non-moving parties. [T]he allegations in [each] Complaint must be viewed as a whole.

*In re Generic*, 338 F. Supp. 3d at 435–36 (internal quotation marks and citations omitted).

**B.     Under this Court's Standards, Plaintiffs Plead Plausible Sherman Act Claims Against Roxane.**

Plaintiffs' conspiracy claims against Roxane rest on allegations of "circumstantial evidence (and the reasonable inferences that may be drawn therefrom)." *Id.* at 440. As this Court explained, "Plaintiffs may withstand dismissal by relying on allegations" of "parallel conduct" and "plus factors that serve as proxies for direct evidence of an agreement." *Id.* at 440–41 (internal quotation marks and citations omitted). For the reasons stated below, the allegations against Roxane satisfy these requirements.[13]

**1.     Plaintiffs' Allegations Satisfy the "Parallel Conduct" Element.**

To satisfy the parallel-conduct element, "Plaintiffs are not required to plead simultaneous price increases—or that the price increases were identical . . . . Rather, they [need only] allege price increases that are reasonably proximate in time and value." *In re Generic*, 338 F. Supp. 3d at 441 (internal quotation marks omitted).

---

[13] Roxane appears to suggest that Plaintiffs are subject to a heightened pleading standard because there has been "years of discovery" in this case associated with earlier filed complaints against other Defendants. Roxane Br. at 1. Not surprisingly, they cite no authority for this proposition, and Plaintiffs are aware of none. To the contrary, at this stage, as this Court has previously held, "to withstand dismissal," Plaintiffs need only "state enough facts to 'raise a reasonable expectation that discovery will reveal evidence of illegal agreement' even if the court believes such proof is improbable." *In re Generic*, 338 F. Supp. 3d at 435 (internal citations omitted).

Roxane does not dispute that it engaged in parallel pricing for the various products that it manufactured and is alleged to have conspired as to. Nor could it, as this element is satisfied by the allegations that

---

[14] Plaintiffs have substituted references in the complaints to "West-Ward" with "Roxane," where appropriate, for purposes of this briefing.

███████████████████████████

███████████████████████████

███

### 2. Plaintiffs' Allegations Establish the Existence of Certain "Plus Factors."

Under the Court's framework, the next step is to examine the "plus factors"—i.e., "circumstances in which the inference of independent action is less likely than that of concerted action." *In re Generic*, 338 F. Supp. 3d at 448 (citation and quotation omitted). This Court identified three plus factors, which Roxane ignores,[15] that, if satisfied, supply the "factual enhancement that is necessary for . . . claims to withstand dismissal." *Id.* Those factors are "(1) evidence that the defendant had a motive to enter into a price fixing conspiracy; (2) evidence that the defendant acted contrary to its interests; and (3) evidence implying a traditional conspiracy." *Id.* (citation and quotation omitted).

#### a. Plaintiffs' "Motive" Allegations Are Consistent and Well-Pled.

Roxane's motive is identical to the motive that the Court previously found sufficient. As was the case with Group 1 Defendants,[16] Roxane operates in "a regulatory regime that could reduce" Roxane's "profits by driving down generic drug prices over time," and thus Roxane and its co-conspirators had the "common motive to set drug prices." *Id.* Notably, Roxane's motive is

---

[15] In an apparent effort to sidestep the Court's prior ruling, Roxane focuses on a subset of the "allegations" the Court previously credited, while ignoring the four factors delineated in the Court's prior opinion. Roxane's Br. at 3. However, this Court made clear that the absence of such allegations is not dispositive. *See In re Generic*, 338 F. Supp. 3d at 426, 428 (finding allegations sufficient despite recognizing that "not all of the Group 1 Defendants are alleged to have received subpoenas" and that some are not "alleged to have had any GPhA board representatives"); *see also In re: Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 732 (E.D. Pa. 2011) ("The [complaint] need not aver even similar allegations as to each applicable defendant in identical form or number."). As demonstrated herein, Plaintiffs' allegations, when viewed in connection with each of the factors identified by this Court, are more than sufficient to state a claim against Roxane.

[16] The term "Group 1 Defendants" is defined by *In re Generic*.

pled via allegations that are identical to those upon which the Court based its prior ruling. *Compare In re Generic*, 338 F. Supp. 3d at 448 (finding motive for all Group 1 Defendants), *with* DPP Compl. ¶¶ 111–128 (asserting the same allegations against Roxane and its co-conspirators); *see also id.* at Ex. G (summary of economic factors indicating collusion in the generic drug industry).

        b.    **Plaintiffs' Allegations of "Actions Against Self-Interest" Are Well-Pled.**

Roxane also does not address the "actions against self-interest" plus factor. As with the motive plus factor, the operative complaints demonstrate this through allegations that are identical to those upon which the Court previously relied. Here, as with the Group 1 Defendants, Roxane's practice of "dramatically increase[ing] [its] prices" without any "correlated . . . changes in demand or manufacturing costs" "would be irrational in a competitive market." *In re Generic*, 338 F. Supp. 3d at 448. *Compare In re Generic*, 338 F. Supp. 3d at 448–49 (finding all Group 1 Defendants committed actions against self-interest), *with* DPP Compl. ¶¶ 133, 147–49, 294, 297–98, 400, 404–05, 855, 857–58, 958, 960–61, 1161, 1165–66, 1187, 1195–96, 1530, 1534–35 (asserting the same allegations against Roxane and its co-conspirators).

        c.    **Plaintiffs Allege Sufficient "Facts Implying a Traditional Conspiracy."**

The third plus factor is satisfied if the complaint alleges that (1) a defendant had the "opportunity to conspire," which can be demonstrated by the allegation that the defendants "had occasion to connect with each other, to engage in strategic business discussions, and to gain awareness of their competitors' current and future business plans," *In re Generic*, 338 F. Supp. 3d at 450; and (2) that the defendant is implicated in a "government investigation," which can be demonstrated by the fact that "at least one manufacturer" of the generic drug "has received a subpoena seeking information regarding [its] generic drug pricing practices." *Id.* at 453.

Roxane is wrong when it claims that no complaint "pleads that any Roxane employee communicated with an employee of any other manufacturer." Roxane Br. at 2. Here, Roxane's "opportunity to conspire" is demonstrated by the allegations that ███████████████ ███████████████████████████████████████████ ██████████

And, contrary to Roxane's contention, Roxane Br. at 4, the complaints specifically allege the drug-specific and overarching conspiracies were aided by Roxane's attendance at these trade association meetings. *See* DPP Compl. ¶¶ 296, 403, 856, 959, 1164, 1194, 1533.[19]

These meetings occurred before, and continued for years after, the conspiracy began. For example:



[17] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

[18] ████████████████████████████████████████████████

[19] The out-of-circuit cases Roxane cites are inapposite. *See* Roxane Br. at 4 (citing *JSW Steel (USA) Inc. v. Nucor Corp.*, No. 4:21-CV-01842, 2022 WL 489321, at *8 (S.D. Tex. Feb. 17, 2022) (quoting *Haywood v. Begue*, No. 13-cv-0335, 2016 WL 1069685, at *6 (W.D. La. Mar. 16, 2016)). In both cases, the court took issue with the fact that the plaintiff had simply alleged that the defendant and co-conspirator "conversed" during trade association meetings, without alleging that those conversations were for the "intent and purpose" of furthering the conspiracy. Here, in contrast, Plaintiffs have alleged just that. *See* DPP Compl. ¶¶ 296, 403, 856, 959, 1164, 1194, 1533.



FILED WITH REDACTIONS – PUBLIC VERSION



Notably, both the number of meetings attended and the number of specific executives in attendance were greater than, or equivalent to, the allegations previously deemed sufficient to satisfy this factor. For example, Mayne Pharma Inc. and Lupin Pharmaceuticals, Inc.—each of which are Group 1 Defendants that sold only one drug—are alleged to have respectively attended (1) one trade-association meeting with four employees and (2) eleven trade-association meetings with nine employees. *See In re Generic*, 338 F. Supp. 3d at 427-32.

Moreover, the allegations at issue here are significantly more detailed than the allegations the Court dismissed from some of the same cases at issue here against one Defendant, Teligent, Inc. ("Teligent"). *Compare In re Generic*, 338 F. Supp. 3d at 451 (noting that only "two specifically named Teligent representatives attended three meetings of one group, and that unnamed Teligent representatives attended six GPhA meetings"), *with* Appendix A ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Finally, although Roxane was not itself implicated by a government investigation, almost all of its co-conspirators have been. *See* DPP Compl. at Ex. C (identifying Actavis, Apotex, Mylan, Par, and Teva as recipients of letter inquiring about generic pricing; identifying Mylan, Par, and Teva as receiving civil investigative demands from DOJ) *see also id.* at Ex. D (identifying Actavis, Greenstone, Mallinckrodt, Mylan, Par, and Teva as entities that received a DOJ subpoena or civil

investigative demand). Indeed, at least one, and in some cases several manufacturers of each drug Roxane is alleged to have conspired as to has received a government letter, subpoena or civil investigative demand—a level that matches or is significantly greater than the Court's prior requirement of "at least one."[20]

In sum, all three plus factors indicate that a plausible conspiracy has been alleged.

**C. Plaintiffs' Allegations Are Sufficient to State a Claim Against Roxane Individually.**

Roxane also argues that Plaintiffs cannot satisfy their pleading obligations by pointing to "allegations as to other Defendants or Defendants generally." Roxane Br. at 6. Roxane is wrong as a matter of law and fact.

As an initial matter, in addition to this Court, multiple other courts permit collective allegations. *See, e.g.*, *Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*, 113 F. Supp. 3d 807, 815 n.1 (D. Md. 2015) ("[N]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant," (quoting *Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*, No. 13-7639, 2015 WL 4040882, at *3 (S.D.N.Y. July 2, 2015)); *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1227 (S.D. Fla.

[20] *See in re Generic*, 338 F. Supp. 3d at 453 ("Although there are no allegations that the [Akorn/]Hi-Tech Defendants, Wockhardt, West-Ward, Teligent, Apotex, Glenmark or Lupin received subpoenas, there are allegations that at least one manufacturer of each of the Group 1 drugs . . . has received a subpoena seeking information regarding their generic drug pricing practices."). Notably, as to the referenced Defendants, the record has changed considerably since the Group 1 motions to dismiss were briefed. Apotex has since entered into a deferred prosecution agreement with the DOJ in which it admitted to anticompetitive conduct relating to Pravastatin. *See* Deferred Prosecution Agreement, *United States v. Apotex Corp.*, No. 20-CR-00169 (E.D. Pa. May 7, 2020), ECF No. 2. Glenmark faces a criminal indictment and is heading toward trial. *See* Second Superseding Indictment, *United States v. Glenmark Pharms. Inc., USA*, No. 20-CR-00200 (E.D. Pa. Aug. 25, 2020), ECF No. 28. The Lupin and West-Ward defendants have since divulged that they received subpoenas in connection with the governmental investigations. *See* EPP Compl., ¶¶ 1895(i), (u). And the Akorn/Hi-Tech Defendants admitted during bankruptcy proceedings to receiving subpoenas. *See* Testimony of Joseph Bonaccorsi, Akorn Executive Vice President, General Counsel, and Corporate Secretary, Bankruptcy confirmation hearing at Tr. 32:7–22, *In re Akorn, Inc.*, No. 20-11177-KBO (Bankr. D. Del. Sept. 2, 2020), ECF No. 684.

2014) ("[A] plaintiff may plead claims against multiple defendants by referring to them collectively, for example by referring to a group of defendants as 'defendants.' These collective allegations are construed as applying to each defendant individually. The practice only runs afoul of the applicable pleading standard where it results in a complaint that fails to give each defendant notice of the claims against it.") (internal citations omitted); *U.S. ex rel. Bibby v. Wells Fargo Bank, N.A.*, 906 F. Supp. 2d 1288, 1298 (N.D. Ga. 2012) ("This is not a situation where the collective pleading of fraud-related allegations against 'defendants' results in a lack of clarity as to what conduct is alleged against each individual defendant. The substantive allegations would have been unchanged if Relators had copied the relevant paragraphs 10 times and replaced the word 'Defendants' with Wells Fargo.").

Here, Plaintiffs' complaints satisfy the pleading and notice requirements. Roxane's own brief makes clear that it is aware of the specific allegations against it with respect to its "drugs at issue."[21] Roxane Br. at 5 n.8 (identifying seven drugs at issue). Nothing more is required at this stage. *See In re Se. Milk Antitrust Litig.*, 555 F. Supp. 2d 934, 949 (E.D. Tenn. 2008) (recognizing that so long as plaintiffs plead the requisite contours of a claim against an antitrust defendant, "[t]hat they require only a few paragraphs or sentences to do so is of no consequence. Whether plaintiffs can ultimately survive a motion for summary judgment after discovery is also of no consequence to the decision of the instant motion").

Moreover, Roxane's argument ignores that this Court previously credited certain non-Defendant-specific allegations—such as those concerning the regulatory regime and its impact on

---

[21] Thus, even under Roxane's cases, which stand for the unremarkable proposition that a complaint must provide a defendant with "notice of the specific claims against" it, Plaintiffs have satisfied their obligations at the pleading stage. *Murray v. Cnty. of Hudson*, No. 17-2875 (JMV) (MF), 2018 WL 3000333, at *5 (D.N.J. June 15, 2018); *see also* Roxane Br. at 6 (citing *In re Mexican Gov't Bonds Antitrust Litig.*, 412 F. Supp. 3d 380, 388 (S.D.N.Y. 2019) (same)).

13

the motive of the generic manufacturers to enter into a conspiracy—in holding that Plaintiffs' prior complaints were sufficient to state a claim. *In re Generic*, 338 F. Supp. 3d at 448. In doing so, this Court recognized that by their nature certain allegations are common to all Defendants and appropriately treated as such by the Plaintiffs in pleading their claims.

This Court should reject Roxane's invitation to upend its prior decision, particularly, whereas here, Plaintiffs' allegations are more than sufficient to state a claim against Roxane.

## IV.   CONCLUSION

Every plausibility and sufficiency argument that Roxane presents is contradicted by the Court's prior ruling. Accordingly, Roxane's motion should be denied. Alternatively, Plaintiffs should be given leave to amend with respect to the claims against Roxane.

Dated: August 5, 2022

Respectfully submitted,

/s/ *Roberta D. Liebenberg*
Roberta D. Liebenberg
**FINE, KAPLAN AND BLACK, R.P.C.**
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
215-567-6565
rliebenberg@finekaplan.com

*Liaison and Lead Counsel for the End-Payer Plaintiffs*

/s/ *William J. Blechman*
William J. Blechman
**KENNY NACHWALTER, P.A.**
1441 Brickell Avenue
Suite 1100
Miami, FL 33131
Tel: (305) 373-1000
Fax: (305) 372-1861
wblechman@knpa.com

*Liaison Counsel for Direct Action Plaintiffs and Counsel for Plaintiffs J M Smith Corp and Walgreen Co.*

/s/ *Dianne M. Nast*
Dianne M. Nast
**NASTLAW LLC**
1101 Market Street, Suite 2801
Philadelphia, PA 19107
215-923-9300
dnast@nastlaw.com

*Liaison and Lead Counsel for the Direct Purchaser Plaintiffs*

/s/ *Peter Gil-Montllor*
Peter Gil-Montllor
Jonathan W. Cuneo
**CUNEO, GILBERT & LADUCA LLP**
Victoria Sims
4725 Wisconsin Ave., NW Suite 200
Washington, DC 20016
Tel: 202-789-3960
pgil-montllor@cuneolaw.com

*Lead Counsel for the Indirect Reseller Plaintiffs*

*/s/ Eric L. Bloom*
Eric L. Bloom
**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**
2805 Old Post Road, Suite 100
Harrisburg, PA 17110-3676
(717) 364-1030
ebloom@hangley.com

Barry L. Refsin
Alexander J. Egerváry
Chelsea M. Nichols
Caitlin V. McHugh
**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**
One Logan Square, 27th Floor
Philadelphia, PA 19103-6910
(215) 568-6200
brefsin@hangley.com
aegervary@hangley.com
cnichols@hangley.com
cmchugh@hangley.com

*Counsel for Plaintiff Rite Aid Corp. and Rite Aid Hdqtrs. Corp.*


*/s/ Anna K. Higgins*
Anna K. Higgins (admitted pro hac vice)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
15058 River Road
P.O. Box 787
Hahnville, LA 70057
Telephone: (786) 206-6532
ahiggins@milberg.com

*Counsel for Plaintiffs MSP Recovery Claims, Series LLC, MSPA Claims 1, LLC, and Series PMPI, a designated series of MAO-MSO Recovery II, LLC*

*/s/ Salvatore C. Badala*
Salvatore C. Badala (SB2053)
**NAPOLI SHKOLNIK PLLC**
400 Broadhollow Road
Melville, NY 11747
Tel: (212) 397-1000
Fax: (646) 843-7603
sbadala@napolilaw.com

*/s/ Nestor D. Galarza*
Nestor D. Galarza
**NSPR LAW SERVICES, LLC**
1302 Avenida Ponce de Leon
Santurce, Puerto Rico 00907
(833) 271-4502
ngalarza@nsprlaw.com

*Counsel for Plaintiffs County of Albany, Town of Amherst, County of Cattaraugus, County of Chemung, County of Chenango, County of Columbia, County of Erie, County of Essex, County of Livingston, MagnaCare Insurance, MEBCO, City of Mobile, County of Monroe, County of Oneida, County of Onondaga, County of Osceola, County of Otsego, City of Poughkeepsie, County of Schuyler, County of Shelby, WCA Group Health Trust, County of Yates, County of Westchester, Illinois Public Risk Fund, and United Crafts Benefits Fund*


s/ Ethan E. Litwin
Ethan E. Litwin
Matthew L. Cantor
**CONSTANTINE CANNON LLP**
335 Madison Avenue
New York, NY 10017
Tel.: (212) 350-2700
elitwin@constantinecannon.com
mcantor@contantinecannon.com

Allison F. Sheedy
**CONSTANTINE CANNON LLP**
1001 Pennsylvania Avenue, NW
Suite 1300N

15

Washington, DC 20004
Tel.: (202) 204-3500
asheedy@constantinecannon.com

*Counsel for Plaintiff CVS Pharmacy, Inc.*